GEORGE C. CHIPMAN et al., Appellants, _v._ CHARLES C. MONTGOMERY, Administrator, etc., et al., Respondents.

An heir at law or next of kin claiming in hostility to a will, cannot maintain an action to obtain a construction thereof.

The jurisdiction of courts of equity to pass upon the interpretation of a will, is incidental to that over trusts. They do not take jurisdiction of actions brought solely for that purpose, or where legal rights only are in controversy.

A party who has an interest in a trust created by the will, if valid, cannot allege the trust for the purpose of giving the court jurisdiction while denying the legal existence of the trust and claiming legal rights inconsistent therewith; to entitle him to the action and judgment of the court, either in execution of the trust or in the construction of the will and the adjustment of the rights of the parties under it, he must elect to take in subordination to the will and under the trust as created.

The will of C., after certain legacies, gave the residue of his estate to his wife and three infant children, jointly; in case of death of the wife or of either of the children without issue, the property to vest in the survivor or survivors; in case of death of the four without issue from the children, the property to vest in testator's children by a former wife, with power to the executors to lease or sell during the minority of the children when, in their judgment, beneficial or necessary for the support of the children. In an action brought by the contingent remaindermen, among other things, for an accounting and settlement of the estate, _held_, that in the absence of averments of abuse of the trust powers, or of waste or improper management, or that the fund was insecure, or that the beneficiaries were doing or threatening any thing in derogation of plaintiffs' rights, the action could not be maintained for such purpose, as plaintiffs did not occupy the position of _cestuis que trust,_ but could only take on the termination of the trust, and as there was but a bare possibility that they would ever become entitled to a share.

_Studholm_ v. _Hodgson_ (3 P. Wms., 300) distinguished.

Also, _held,_ that plaintiffs were not entitled to any relief the devise over to them being void, as it only could take effect upon the termination of four lives in being at the death of the testator.

It was claimed that, so far as it relates to the disposition of the residue of the personal estate under the will, the action could be maintained as plaintiffs were entitled to an accounting. Two of the plaintiffs, to whom the will gave legacies, had received and receipted for their legacies, in whole or in part. _Held,_ that having accepted the benefits of the provision made for them they could not be heard in opposition to other parts of the instrument, except upon proof that they had not

intelligently elected to take under the will, and upon a return of all they had received.

Two of plaintiffs were infants. *Held,* that they or their guardian, *ad litem,* were incapable of election and that they could not bring an action dependent upon an election between two conflicting rights, except by direction of the court.

One plaintiff was not a beneficiary under the will. *Held,* that as she had brought a joint action with the others, and as to give judgment for her, dismissing the complaint as to the others, would leave the action defective for want of parties, the complaint was properly dismissed as to all.

Also, *held,* that the action ought not to be sustained as one for an accounting as to the personalty, the Surrogate's Court having full power and jurisdiction, and being the appropriate tribunal.

A court of equity will not take cognizance of an action for the settlement of an estate disconnected with the enforcement of a special and express trust, unless special reasons are assigned and facts stated to show that complete justice cannot be done in the Surrogate's Court.

In cases where, under section 306 of the Code, costs are in the discretion of the court, the discretion exists and may be exercised in every stage of the action, and therefore by this court upon appeal, as to costs of appeal.

The latter clause of that section, declaring costs of appeal in certain cases to be in the discretion of the court, merely extends that discretion to cases in which, but for that provision, costs would have been recoverable by the prevailing party under sections 304 and 305.

(Argued November 12, 1875; decided November 23, 1875.)

THESE were cross appeals from judgment of the General Term of the Supreme Court in the third judicial department, affirming in part and reversing in part a judgment in favor of defendants entered upon a decision of the court at Special Term.

This action was brought to obtain a judicial construction of the will or wills of John S. Chipman, deceased, and for an accounting and settlement of the estate.

Plaintiffs are the heirs and next of kin of deceased by his first wife ; defendants are the personal representatives and the heirs and next of kin by his second wife. Said Chipman died September, 10, 1862. He left two wills, one made in 1854, the other in 1860. In general scope the wills were the same ; the changes in the second being simply as to certain legacies. Subsequent to the second will, a codicil was executed

changing a legacy. The first will contained this clause: "Item: I give, devise and bequeath to my beloved wife, Sarah R., and to my three infant children, Mary, Harriet Maria and Sarah Bell, jointly, all the rest and residue of my estate, both real and personal, of whatsoever name and description, in possession and in action, at law and in equity, to have and to hold to them and their heirs and issues forever; but in order that a title in fee to the said real estate hereby devised to my said wife shall be vested in her, she shall, within three months after my decease, execute to my said infant children a release of her right of dower in my real and personal estate, and cause the same to be placed upon record in the clerk's office of the county of St. Lawrence. In case of the death of my said wife, or of one of the said infant children, without issue from said children, or either of them, the said property, devised to them jointly, shall vest in the survivor or survivors of them, but in case of the death of the four, without issue from the children, the property shall vest in my children by my first wife, or their representatives.

And I hereby authorize my said executrix and executor, or any one of them who shall alone accept and qualify as executrix and executor, to lease or sell, from time to time, such portion or portions of my real or personal estate as, in their judgment, or the judgment of the one of them who shall alone qualify, may be beneficial to my estate, or necessary for the proper support and maintenance and education of my said infant children, whom it is my desire to have educated in a proper and respectable manner, suited to the condition and standing of my family, and for the proper support and maintenance of my said wife, and for this purpose, and for the purpose of managing my estate in the most prudent and economical manner, for the best advantage of my said wife and infant children, my said executrix and executor, or such one of them as shall alone accept and qualify, are authorized to make and execute all proper and necessary leases, contracts and deeds of conveyance to the lessees

and purchasers, during the minority of my said infant children; provided, nevertheless, that the signature of my said wife shall be necessary to the validity and efficacy of any conveyance of said real estate, or any part thereof, and that in all cases she shall be one of the persons whose consent shall be necessary to the sale and transfer of real or personal property; in the case of sale of real estate, such consent to be by her signature to the conveyance or contract, provided such sale, contract or conveyance be made during her lifetime."

The second will contained a clause identical, save a few merely verbal variations. Both wills and the codicil were admitted to probate. The wife and the three children mentioned in said clause survived him; two of the latter have since married, and have children. The widow was named as executrix, and she alone qualified, and letters testamentary were issued to her. She never rendered any account. Upon her death, letters of administration *de bonis non*, with the will annexed, were issued. The testator left over $22,000 of personal property, and real estate valued at $20,000. Some portions of the real estate were sold and conveyed by the executrix during her lifetime. One of the plaintiffs received the whole of the legacy given him by the will, giving a receipt in full of all claims against the estate. Another received portions of her legacy, receipting therefor.

Upon these facts, the court found the following conclusions of law:

That the two wills and codicil of the deceased should be considered and construed together in determining what constitutes his last will and testament. That the will of 1860 was intended by the testator as a substitute for the will of 1854; and, in so far as the will last executed differs from the first, the last is a substitute for and revokes the first. That the provisions of the residuary clause, in so far as they limit remainders of the real estate or executory gifts of the personal estate, upon default of any issue of the testator's daughters by his second wife, to the successive survivors of the widow

and his said three daughters, and in case of the death of the four, then to the children of the first wife, are void, as by possibility suspending the absolute power of alienation of the real estate for a longer period than during the continuance of not more than three lives in being at the creation of the estate therein, and as suspending the absolute ownership of the personal property for a longer period than two lives in being at the death of the testator. The provisions of the residuary clause of said will, conferring upon the executors authority to lease and sell the premises devised therein, did not vest an estate in said executors, nor make them the trustees of an express trust. The parts of the residuary clause of the will herein found to be void are separable from the other parts without violating the intent of the testator, as expressed in his will, to wit: to dispose of the greater part of his real estate and personal estate for the benefit of his widow and three infant daughters by his second wife. Such separation results in substantially the same disposition that the testator desired in the event (now realized) that any of his said daughters should have issue. The devise and bequest in the residuary clause to the widow and three infant daughters of the testator, and also the provision that, upon the death of his widow, the property devised and bequeathed to the four jointly should vest in the survivors of them — should be permitted to and do stand as valid dispositions by the testator of his property, without any change or modification by the subsequent provisions thereof hereinbefore declared to be void. That the three daughters became, upon the death of their mother, the absolute owners, as tenants in common, of said residuary estate, subject to the acts of their mother, in execution of the power to lease or sell, given her by said will, so far as she had exercised such power.

Judgment in favor of the defendants, in accordance with the above conclusions, was directed as against the plaintiffs, and that the complaint be dismissed, with costs against the plaintiffs.

Judgment was entered accordingly.

SICKELS—VOL. XVIII.     29

The General Term affirmed that portion of the judgment dismissing the complaint, and reversed that portion giving construction to the will.

*Edward C. James* for the appellants.    Plaintiffs are entitled to maintain this action.    (*Post* v. *Hover*, 30 Barb., 312, 324; 33 N. Y., 593, 602 ; *Bowers* v. *Smith*, 10 Paige, 194; *Kiah* v. *Grenier*, 1 S. C. R., 388, 390 ; 56 N. Y., 220 ; *Studholme* v. *Hodgson*, 3 P. Wms., 300.)    The receipts signed by plaintiffs do not debar them from maintaining this action. (*Ensign* v. *Webster*, 1 J. Cas., 145 : *Sanford* v. *Sanford*, 2 S. C. R., 641; 56 N. Y., 359; Story's Eq. Jur., § 1097 ; *Wake* v. *Wake*, 1 Ves. Jr., 335 ; *Adsit* v. *Adsit*, 2 J. Ch., 448, 451; *Wintour* v. *Clifton*, 21 Beav., 447, 468 ; *Pusey* v. *Desbouverie*, 3 P. Wms., 315 ; *Spread* v. *Morgan*, 11 H. of L. Cas., 588, 602, 611, 615 ; 1 Cas. in Eq. [3d ed.], 394, 419 ; *Hawley* v. *James*, 16 Wend., 142, 254; *Knox* v. *Jones*, 47 N. Y., 389, 399; *Thompson* v. *Carmichael*, 1 Sandf. Ch., 388; *Jewett* v. *Miller*, 10 N. Y., 402.)    It was error to award costs against plaintiffs.    (*Rogers* v. *Ross*, 4 J. Ch., 608; *King* v. *Strong*, 9 Paige, 94; *Smith* v. *Smith*, 4 id., 271 ; *Sawyer* v. *Baldwin*, 20 Pick., 378, 388 ; *Vernon* v. *Vernon*, 53 N. Y., 353, 363; *Chamberlin* v. *Chamberlin*, 43 id., 425, 446 ; *Kiah* v. *Grenier*, 1 S. C. R., 388, 390 ; 56 N. Y., 220; *Oxley* v. *Lane*, 35 id., 340, 351; *Post* v. *Hover*, 30 Barb., 312, 324; 33 N. Y., 602.)    An instrument in revocation or alteration of a will must declare such revocation or alteration.    (2 R. S., 64, § 42 ; *Simmons* v. *Simmons*, 26 Barb., 68 ; 24 How. Pr., 611, note ; *Baillie* v. *Butterfield*, 1 Cox, 392, 393; *Morrill* v. *Dickey*, 1 J. Ch., 153, 156 ; *Rose* v. *Lewis*, 3 Lans., 320.) When two testamentary instruments are established, full force and effect is to be given to the former, except so far as its provisions are irreconcilably inconsistent with the latter.    (*Brant* v. *Wilson*, 8 Cow., 56; *Nelson* v. *McGiffert*, 3 Barb. Ch., 158; *Campbell* v. *Logan*, 2 Bradf., 90 ; *Conover* v. *Hoffman*, 1 Bosw., 214; *Hooley* v. *Hatton*, 2 H. & W. Lead. C. in Eq. [m. p.], 285, and notes, 299–302 ; *Dewitt* v.

*Yates*, 10 J. R., 156, 158; *Hurst* v. *Beach*, 5 Mad. Ch., 351, 359; *Guy* v. *Sharp*, 1 Myl. & K., 589; *Hall* v. *Hill*, 1 Dr. & War., 94, 116; *Martin* v. *Drinkwater*, 2 Beav., 215; *Russell* v. *Dixon*, 2 Dr. & W., 137; *Lee* v. *Pain*, 4 Hare, 218, 236; *Wilson* v. *O'Leary*, L. R., 12 Eq., 525; 7 Ch. App., 448.) It was error to hold that the provisions of the residuary clause of the will did not vest an estate in the executors, or make them trustees of an express trust. (*Fisher* v. *Fisher*, 10 J. R., 496, 505; *Pushman* v. *Fileter*, 3 Ves. Jr., 7; *Vernon* v. *Vernon*, 53 N. Y., 351, 359; *Kiah* v. *Grenier*, 56 id., 220; *Bradley* v. *Amidon*, 10 Paige, 235, 241, 242; *Vail* v. *Vail*, 4 id., 317, 328; 7 Barb., 226, 235–237; *Van Nostrand* v. *Moore*, 52 N. Y., 12; *Tobias* v. *Ketchum*, 32 id., 319, 327; *Donaldson* v. *Am. Tract Soc.*, 1 S. C. R., 15; *Brewster* v. *Striker*, 2 N. Y., 19; *Legget* v. *Perkins*, id., 297; *Vernon* v. *Vernon*, 53 id., 351, 358, 359; *Stagg* v. *Buckman*, 3 Edw. Ch., 89; *Tucker* v. *Tucker*, 5 N. Y., 408.) The effect of this express trust was to make the whole residuary devise and bequest void, and to vest the estate in the heirs at law and next of kin. (*Van Kleeck* v. *Dutch Church*, 20 Wend., 480; *Van Nostrand* v. *Moore*, 52 N. Y., 12, 22; *Campbell* v. *Foster*, 35 id., 366–373; *Knox* v. *Jones*, 47 id., 389; *Thomas' Estate*, 1 Tucker, 367, 370; *Belmont* v. *O'Brien*, 12 N. Y., 394, 402; *Hawley* v. *James*, 16 Wend., 62; *Post* v. *Hover*, 33 N. Y., 593–601; *Oxley* v. *Lane*, 35 id., 344; *Everett* v. *Everett*, 29 id., 39, 71; *Manice* v. *Manice*, 43 id., 303; *Amory* v. *Lord*, 9 id., 403; *Vail* v. *Vail*, 7 Barb., 226, 235–237; *Coster* v. *Lorillard*, 14 Wend., 265, 343; *Thompson* v. *Clendening*, 1 Sand. Ch., 387, 396; *Kane* v. *Gott*, 14 Wend., 641, 662; *Leonard* v. *Burr*, 18 N. Y., 96, 107; 4 Kent's Com., 272, 273; *Moore* v. *Littel*, 41 N. Y., 66; *Norris* v. *Beyea*, 13 id., 273; *Tyson* v. *Blake*, 22 id., 558; *Terry* v. *Wiggins*, 47 id., 512, 518; 2 Lans., 272–275; *Hatfield* v. *Sneden*, 42 Barb., 615, 621, 622; *Bundy* v. *Bundy*, 38 N. Y., 410, 420, 421; *Harrison* v. *Harrison*, 36 id., 543; *Schettler* v. *Smith*, 41 id., 328; *Savage* v. *Burnham*, 17 id., 561, 570, 571; *Woodruff* v. *Cook*, 47 Barb., 304, 307, 308.)

*Leslie W. Russell* for the respondents. The action for construction will not lie. (*Brown* v. *Ricketts*, 3 J. Ch., 553; Laws 1853, p. 526; *Brown* v. *Smith*, 10 Paige, 193; *Onderdaunt* v. *Smith*, 34 Barb., 106; *Woodruff* v. *Cook*, 47 id., 305; *Post* v. *Hoover*, 33 N. Y., 602; *Walrath* v. *Handy*, 24 How., 352; *Bailey* v. *Southwick*, 6 Lans., 362; *Heywood* v. *City of Buffalo*, 14 N. Y., 540; *Hubbell* v. *Lerch*, 58 id., 237; 56 id., 413.) Plaintiffs have determined their rights by their own action. (*People* v. *Cook*, 8 N. Y., 67; *Havens* v. *Sackett*, 15 id.; Story's Eq. Jur., §§ 1077, 1080, 1094; *Hawley* v. *James*, 16 Wend., 61; *Salmon* v. *Stuyvesant*, id., 321; *Bloomer* v. *Bloomer*, 2 Bradf., 339; *Leonard* v. *Cromelin*, 1 Edw., 206; *Arnold* v. *Gilbert*, 3 Sandf. Ch., 531; *Firemens' Ins. Co.* v. *Lawrence*, 14 J. R., 55.) The scheme of the latter will was inconsistent with the other, and no words of revocation were necessary. (*Van Brunt* v. *Benedict*, 1 Bradf., 114; *Barlow* v. *Coffin*, 24 How. Pr., 54; *Brant* v. *Wilson*, 8 Cow., 56; *Nelson* v. *McGiffert*, 3 Barb. Ch., 158; *Honfrey* v. *Honfrey*, 4 Moore, 29; 15 E. L. and Eq., 283; 6 Jur., 355; 4 Kent, 528; *Simmons* v. *Simmons*, 26 Barb., 68; *Trustees* v. *Calhoun*, 25 N. Y., 424.) A devise by implication cannot be presumed, unless upon examination of the whole will it is necessary, to carry into effect the intent of the testator. (*Post* v. *Hoover*, 33 N. Y., 599; *Tucker* v. *Tucker*, 5 id., 408; *Rathbone* v. *Dyckman*, 3 Paige, 9; Jar. on Wills, 465.) An executor never takes by implication an estate when his duties can be discharged under a power. (*Tucker* v. *Tucker*, 5 N. Y., 408; 1 R. S., 731, §§ 76–79; 735, § 106.) If an express trust had been created which was not valid, it could be lawfully executed as a power in trust, and the title remained in the devisees. (1 R. S., 729, §§ 58, 59; *Fellows* v. *Hermance*, 4 Lans., 230; *Smith* v. *Bowen*, 35 N. Y., 81.) The devise to the wife and her children was valid, and did not unduly suspend the power of alienation. (*Gott* v. *Cook*, 7 Paige, 523; *Morton* v. *Morton*, 8 Barb., 19; 1 R. S., 727, § 44; *Cromwell* v. *Cromwell*, 3 Edw. Ch., 495; 3 Ch. Sent., 7; *Everett* v. *Everett*, 29 N. Y.,

39; 4 Kent's Com. [11th ed.], 364; *Vernon* v. *Vernon*, 53 N. Y., 351; *Bates* v. *Hillman*, 43 Barb., 645; *Moore* v. *Lyons*, 25 Wend., 118; *Leggett* v. *Hunter*, 19 N. Y., 462; *Du Bois* v. *Ray*, 35 id., 168; *Weed* v. *Aldrich*, 2 Hun, 168; 1 R. S., 722; *Lott* v. *Wyckoff*, 2 Comst., 355; 1 R. S., 718, §§ 5, 6; *Holmes* v. *Seeley*, 17 Wend., 65; *Otis* v. *Thompson*, H. & D. Supp., 131; *Byron* v. *Van Hoesen*, 5 J. R., 66; *Beecher* v. *Crouse*, 19 Wend., 306.) Where the main intent of a testator is lawful and may be effectuated, secondary or ulterior limitations which are unlawful may be dropped and the valid sustained. (*Van Nostrand* v. *Moore*, 42 N. Y., 12; *Manice* v. *Manice*, 43 id., 303; *Floyd* v. *Fitcher*, 38 Barb., 409; *King* v. *Rundell*, 15 id., 139; *Fowler* v. *Depaw*, 26 id., 224; *Post* v. *Hoover*, 30 id., 312; *Williams* v. *Conrad*, id., 525; *Everett* v. *Everett*, 29 N. Y., 39; *Savage* v. *Burnham*, 17 id., 561, 576; *Gilman* v. *Redington*, 24 id., 9; *Oxley* v. *Lane*, 35 id., 340; *Hull* v. *Hull*, 24 id., 647; *Hone* v. *Van Schaick*, 20 Wend., 564; *Darling* v. *Rogers*, 22 id., 483; *Haxtun* v. *Corse*, 2 Barb. Ch., 506; *Gott* v. *Cook*, 7 Paige, 521; *Depeyster* v. *Clendenning*, 8 id., 295; *Van Vechten* v. *Van Vechten*, id., 120; *Moore* v. *Lyons*, 25 Wend., 124; *Lytle* v. *Beveridge*, 58 N. Y., 598.)

ALLEN, J. Under the cover of an action in form for the construction of the will of John S. Chipman, the ancestor of the principal contestants, it is sought to overthrow the will and establish the right of the plaintiffs to share in his estate as in the case of intestacy. The claim put forth and urged in every stage of the action rests upon an alleged intestacy of the decedent, by reason of the invalidity of the attempted testamentary disposition of the bulk of his property. It is insisted that the whole scheme and purpose of the will fails for the want of an effectual gift of the principal portion of the estate, which could not take effect because violative of the law against perpetuities. The plaintiffs as heirs at law and next of kin, claiming in hostility to the will, have no interest in the interpretation of that instrument, and have no stand-

ing in court in an action for that purpose, but must assert their rights directly by proper action at their peril, taking the chances of being subjected to costs in case of failure as in other controversies. (*Post* v. *Hover*, 33 N. Y., 593; *Bowers* v. *Smith*, 10 Paige, 193.) A court of equity has an incidental jurisdiction in respect to wills, and does not take jurisdiction of an action brought merely for the construction of a will or other instrument at the instance of every person who claims to be directly or indirectly interested in the subject-matter of the instrument. The rule is, that to put a court of equity in motion, there must be an actual litigation in respect to matters which are the proper subjects of the jurisdiction of that court, as distinguished from a court of law. Although the distinction between actions at law and suits in equity is abolished, the distinguishing features of the two classes of remedies, legal and equitable, are as clearly marked and rigidly observed as they ever were, and this is essential to the administration of justice in an orderly manner and the preservation of the substantial rights of suitors. This results not from any necessary difference in the forms of pleadings and of actions, but the substantial difference between legal and equitable rights. Hence one who claims real property must bring his action of ejectment or other proper action for its recovery, and he who had a right to personalty or to any debt or duty, which is the subject of an action at common law, must resort to the appropriate remedy by action for the specific property, debt or duty, or damages for the infringement of his right. It is by reason of the jurisdiction of the Court of Chancery over trusts that courts having equity powers as an incident of that jurisdiction, take cognizance of, and pass upon the interpretation of wills. They do not take jurisdiction of actions brought solely for the construction of instruments of that character, or when only legal rights are in controversy. Judge Folger, in *Bailey* v. *Briggs* (56 N. Y., 407), well expresses the rule in these words: "It is when the court is moved in behalf of an executor, trustee or *cestui que trust*, and to insure a correct administration of the power

conferred by a will, that jurisdiction is had to give a construc-
tion to a doubtful or disputed clause in a will.   The jurisdic-
tion is incidental to that over trusts." This is in accord with
all the cases in which the question has been considered by the
courts in this State. ( *Walrath* v. *Handy*, 24 How. Pr., 353;
*Post* v. *Hover*, *supra; Woodruff* v. *Cook*, 47 Barb., 304;
*Bowers* v. *Smith*, *supra; Onderdonk* v. *Mott*, 34 Barb., 106.)
In *Kiah* v. *Grenier* (56 N. Y., 220), as the respondent·had
judgment of affirmance, the objection to the case made by the
plaintiff, and her right to maintain the action, was not con-
sidered.

The plaintiffs neither by their complaint nor their conten-
tion in this court, or in the court of original jurisdiction,
allege a trust for their benefit and seek its due execution, and
ask a construction of the different parts of the will as affecting
that trust.   It is true that the counsel for the plaintiffs, while
alleging the invalidity of the residuary clause of the will, did
claim, that if it was valid, a trust was created in which they
have a remote and contingent interest, and that by reason of
such trust the court had jurisdiction of the action, and as an
incident of that jurisdiction could pronounce upon the validity
of the clause creating the trust, and adjudge them entitled, as
heirs and next of kin, to the destruction of the trust and the
overthrow of the entire will.   The plaintiffs cannot entitle
themselves to the intervention of the instrument while occu-
pying such a position.   They cannot, for the purpose of giving
the court jurisdiction, allege a trust within the general powers
of the court, and in the same breath deny the legal existence
of the same trust, and insist upon·legal rights inconsistent
with it.   The trust being invalid the court cannot entertain
jurisdiction of the other matters.   If the trust attempted to
be created by the residuary clause of the will is legal, then
there is no need of a judicial construction of the instrument,
for no question is made as to its true meaning or the rights
of the parties.   If it is invalid, as in contravention of the
statutes against perpetuities, then the rights of the parties are
purely legal and to be enforced as such.   The plaintiffs, to

entitle themselves to the action and judgment of the court, either in the execution of the testamentary trust or in the construction of the will and the adjustment of the rights of the parties under it, must elect to take in subordination to the will and under the trust as created by the testator, and establish their rights as *cestuis que trust*. They cannot have the benefit of a trust which they repudiate, merely to give them a standing in court. They should, in their complaint, have unequivocally avowed their election to accept the contingent benefit under the residuary clause, and renounced all adverse claims, and they can only demand a judicial construction of the will, and an accounting by the trustees when they shall do so. (*Brown* v. *Ricketts*, 3 J. Ch., 553.) It is very evident that when the plaintiffs assume that attitude, and claim only in accordance with the will, there will be no further litigation.

Assuming that the plaintiffs claim in this action only as contingent remaindermen, and to protect their interests as such under the will, and according to its terms, they have not made a case entitling them to an accounting, or to any equitable relief. They do not, in that aspect of the case, occupy the position of *cestuis que trust*. The trust is only for the benefit of the children of the testator by his second wife, during their infancy, and must necessarily terminate before the estate can vest in the plaintiffs, or they can have any benefit under the devise, or vested interest in the fund. They only take a remainder after the death of the *cestuis que trust*, and the consequent termination of the trust, and they take the legal estate and not the beneficial interest of the estate held in trust. The powers of the trustees over the estate, to be exercised for the benefit of the *cestuis que trust*, the infants, are very broad, and only limited by the necessities of the beneficiaries and the proper management of the estate in the judgment of the trustee. There is no averment that these powers have been or are being abused ; that the estate is not properly managed and applied to the use of those entitled, and with discretion and proper economy. There is no averment of waste, or that the property or fund is inse-

cure, or that the beneficiaries *in esse* are doing or threatening any act in derogation of the just right of those in remainder, or doing or threatening any act inconsistent with the proper administration of the estate, and their beneficial interests in and legal control over it. Upon any construction of the will, assuming its validity, there is but a bare possibility that the plaintiffs can ever become entitled to share in it. So remote is the contingency, that it would require a very strong case to authorize the intervention of the court to secure it against the beneficial user by those *in esse*, and to whom it is given absolutely, subject only to the happening of the death of the four first taking without issue, three of them infants at the death of the testator, and one or more of whom has issue living at this time. It is entirely unlike the case of *Studholme* v. *Hodgson* (3 P. Wms., 300), relied upon by the counsel for the appellants. In that case the plaintiff was entitled as devisee in remainder to the personal estate of the testator upon the death of the defendant, Mary Hodgson, without other issue than the son to whom the estate had been devised in the first instance, and in case of his death during infancy, then to the plaintiff upon the contingency mentioned. The son had died during infancy, and the mother, Mary Hodgson, was forty, and her husband, fifty years old. The court, holding that the accumulations from the death of the first devisee should be added to the capital, and would belong to the plaintiff in case no other issue was born to Mary Hodgson, decreed under the peculiar circumstances of the case that he was entitled to an account of the estate, and that it be set apart and secured for his benefit. The right was adjudged in that case not too remote in time for the intervention of the court, as it would be determined on the death of Mary Hodgson whether it would ever vest or not. The defendants were merely trustees, and had no beneficial interest or right to use the fund, although they claimed that Mrs. Hodgson was, by implication, entitled to the income, and this claim was rejected by the court.

But a full and complete answer to the claim of the plain-

tiffs to any relief as devisees under the will, is, that whether the devise of the residue to the widow and her children, by the testator, be adjudged valid or invalid, the devise over to the plaintiffs cannot be sustained, as it can only take effect upon the termination of four lives in being at the death of the testator. The gift over does not constitute an essential part of the disposition of the residue, so that it being invalid it taints and destroys the gift to the first takers, those whom the testator had chiefly in his mind, and to provide for whom was, as expressly declared, the primary and principal object of the will. The devise over was incidental and to provide against a contingency which might, but was not likely to happen, and if that incidental purpose chances to be illegal, it does not destroy the principal and lawful purposes of the testator. The object of the action is to nullify and destroy, and not to ascertain the true intent, and to carry into effect the purposes of the will, and is without a precedent.

It was suggested as one ground upon which the action could be maintained, should it be held that in respect to the realty the plaintiffs must resort to an action of ejectment or other proper action for its recovery if it was not effectually disposed of by the will, that if the disposition of the residue of the estate was invalid, the plaintiffs, as next of kin, were entitled to an accounting in respect of it, and a distribution among those entitled. Two of the plaintiffs have received, in whole or in part, the legacies given them by the will, and having accepted the benefits of the provision made for them, cannot be heard in opposition to other parts of the instrument, except by proof of circumstances showing that they had not intelligently elected to take under the will rather than in opposition to it, and a return of all that has been received by them. A person cannot accept and reject the same instrument. Courts of equity proceed upon the theory that there is an implied condition, that he who accepts a benefit under the instrument shall adopt the whole, conforming to all its provisions and renouncing every right inconsistent with it. (2 Story Eq. Juris., § 1077, and cases cited in note,

2; *Havens* v. *Sackett,* 15 N. Y., 365.)   Lord REDESDALE held that this rule of election was applicable to every species of instrument, whether deed or will, and to be a rule of law as well as equity. (*Birmingham* v. *Kirwan,* 2 Sch. & Lef., 444.)   There is no fact assumed or proved to destroy or detract from the effect of these receipts as evidence of a deliberate election to accept under the will.   Two other of the plaintiffs are infants and incapable of election or of bringing an action dependent upon an election between the conflicting rights except by direction of the court upon an investigation of the facts, and ascertaining what would be for their interest. The guardian *ad litem* does not profess to have chosen for them, and his election would not bind them had he done so. The only other plaintiff was not a beneficiary under the will, and is not driven to an election, but she has brought a joint action with others, as plaintiff, and to give judgment for her, dismissing the complaint as to the other plaintiffs, would leave the action defective for want of parties.   All are necessary parties, but they cannot maintain a joint action.   The court below was not asked to retain the action as the several action of Mrs. Ford, and the complaint was properly dismissed as to all.

Again, as an action for an accounting as to the personalty, as in case of intestacy, the action ought not to be sustained. The laws give full powers to the Surrogate's Court to call executors and administrators to an account, and to distribute the estate among the next of kin, and to pass upon every question that may arise, whether directly or indirectly, in the progress of the accounting and final distribution.   That is the appropriate tribunal, conceding that, to a limited extent, concurrent jurisdiction exists in a court of equity.   The jurisdiction of courts of equity, in respect to accounts in the course of administration and the marshaling of assets, grew out of the defects in the process and powers of ecclesiastical courts, and the early courts of probate.   The jurisdiction over cases of administration was made to rest upon the notion of a constructive trust in executors and administrators, as well as the

necessity of taking accounts and compelling a discovery. (1 Story Eq. Jur., § 534.) But these considerations do not apply in ordinary cases to the settlement of estates in this State, and to withdraw a case of mere settlement of an estate disconnected with the enforcement of a special and express trust, as distinguished from what is called a constructive trust in all administrations, from the tribunal created for that purpose with ample powers, special reasons should be assigned, and facts stated to show that full and complete justice cannot be done in that court. Upon a final accounting, and that is what the plaintiffs are entitled to if they have any rights as next of kin, creditors as well as next of kin and legatees are entitled to be heard, and they may much more easily be cited before a surrogate than made parties to a formal suit in equity. (2 R. S., 93, § 60.) The complaint is not framed, nor was a case made for an accounting in a court of equity by the administrator *de bonis non,* or by the representatives of the deceased executrix. Ch. KENT recognizes the rule that creditors may come into the Court of Chancery for the discovery of assets; but that draws the whole settlement of the estate into chancery, which certainly is not to be encouraged. (*Thompson* v. *Brown,* 4 J. Ch., 619.) In *Seymour* v. *Seymour* (id., 409), the court refused to take jurisdiction and interfere with the ordinary exercise of the powers of the surrogate in the settlement of the accounts of administrators and the distribution of the estate without some special reason set forth in the bill. The province of the Court of Chancery was to aid by discovery, and, when necessary, by injunction, the courts of surrogates, in the exercise of their general powers; and the jurisdiction should be regarded rather as auxiliary than concurrent. But there is no action permissible now for a discovery, and the plaintiffs do not make a case for, or ask an injunction. It is not optional with executors and administrators accounting on their own motion, or creditors, legatees or next of kin, calling them to an accounting, to pass by the Surrogate's Court, having ample jurisdiction in the premises, and, without assigning any special reason, and proceed by

formal action in a court of equity, making all persons whose presence is necessary to a final accounting parties to the action.   It would be unreasonable to subject the parties to the vexation and delay, and the estate to the unnecessary costs of such a litigation.   (*Adams* v. *Adams*, 22 Vt., 50.)

There is no question properly before us, as to which of the two instruments was the will of the testator, or whether both with the codicil to the last constituted such will.   All these instruments were probated, and adjudged to constitute, together, the will of the decedent; and this adjudication is unreversed; and whether the legacies were cumulative is a question of law, to be determined when the legatees shall demand them as cumulative legacies by action, as they may, or seek their payment by proceedings before the surrogate, as is usually done.   Whether the will is valid or invalid, the plaintiffs are not entitled to maintain this action; and the judgment dismissing the complaint should be affirmed with costs.   The costs below were in the discretion of the court.

All concur.

Judgment affirmed.

A motion was subsequently made to amend the remittitur as to costs, upon which the following opinion was written:

*Per Curiam.*   The principal appeal, and the only one which the court had occasion to consider, was that of the plaintiffs from the judgment dismissing the complaint.   The cross-appeals of the parties from so much of the judgment of the Supreme Court as refused to give construction to the will and adjudicate upon the rights of the parties thereunder, were only important in the event that this court should decide that this complaint was erroneously dismissed; the questions involved in those appeals could only be considered upon a reversal of the principal judgment of the court below — that is in case the plaintiffs should succeed upon their main appeal.   The plaintiffs, failing in that, the other appeals were unimportant, and the defendants were successful in the litigation.

The court adjudged that, under the circumstances, the plaintiffs should be charged with the costs of the litigation in this court. It all resulted from the appeal of the plaintiffs from the judgment of dismissal, the other appeals being mere incidents of and made necessary by the principal appeal. By inadvertence of the clerk merely, this result was not clearly expressed in the remittitur.

The learned counsel for the plaintiffs is in error in supposing that the costs of all the appeals were not in the discretion of the court; this belonged to the class of actions in which, by the Code (§ 306), costs are within the discretion of the court. In actions in which, by that section, costs may be allowed or not, in the discretion of the court, the discretion exists, and may be exercised in every stage of the action. The further provision, that in certain cases mentioned, the costs of an appeal shall be in the discretion of the court, was intended to extend the discretion to cases in which, but for that provision, costs would have been recoverable by the prevailing party under sections 304 and 305 of the Code. *Montgomery County Bank* v. *The Albany City Bank* (3 Seld., 459), was one of that class of cases; and but for this special provision the court could not have exercised the discretion which they did as to the costs of the appeal.

This court has invariably exercised a discretion as to the costs of appeals in actions usually known as equitable actions, or, in other words, such as are not embraced within section 304 of the Code.

The motion must be, therefore, granted, and the remittitur so amended as to give the defendants, respondents in the plaintiff's appeal, costs of such appeal, and denying any other costs to either party as against the other upon the appeals.

All concur.

Ordered accordingly.