IN THE MATTER OF THE PETITION OF FRANCIS WILLARD BREWER, THAT HIS ACCOUNTS, AS TRUSTEE, BE PASSED, AND FOR OTHER RELIEF.

*Trustee of a married woman — he is to decide whether or not to grant an application to convey the trust property to her, made under section 2 of chapter 375 of 1849 — a trustee appointed to receive rents and profits of real estate may permit the beneficiary to occupy the premises — to entitle a trustee to apply to the court for directions there must be some doubt or obscurity as to the trust.*

Upon the hearing of an application made by the petitioner, as the trustee of a trust created by one James F Penniman, deceased, for the benefit of his daughter in law, it appeared that the petitioner and his predecessor in office had permitted the appellant, who was entitled by the terms of the trust to receive, during the term of her natural life, the rents, issues and profits of a dwelling-house conveyed to the trustee. to occupy the premises with her husband and children from the time the trust was created to January, 1884, when this proceeding was commenced by the presentation of a petition asking for the passing of his accounts and for instructions as to what it was proper for him to do in the management of the trust, and as to his duty concerning the possession of the trust estate, and for other relief

*Held,* that as the trustee had paid out nothing in the administration of his trust, and had received none of the proceeds of the property, there was no foundation for any accounting between himself and the beneficiary

The beneficiary, a married woman, having obtained from a justice of the Supreme Court a certificate that he had examined the condition and situation of the property, and made due inquiries into her capacity to manage and control the same, presented to her trustee a written request, as provided in section 2 of chapter 375 of 1849, to convey to her the said premises for her sole and separate use. By the terms of the trust, the property was to be conveyed, on the death of the appellant, to such person as she might, by will, appoint, and, in default of such appointment, to her heirs The trustee refused to make the conveyance.

*Held,* that even if the statute should be held to include a trust of this description, it imposed no duty or obligation upon the trustee to convey the property, but merely authorized him to convey or not, as he might deem best, without requiring him to assign any reason for his determination, and that it did not entitle him to apply to the court for instructions as to what he should do.

The law does not permit a trustee to institute proceedings in equity to ask the advice or direction of the court, where the power has been wholly and plainly confided to him, and the decision of the question as to what he should or should not do has been left to him to decide in his discretion.

To entitle him to apply to the court for directions, there must be at least some obscurity or doubt in the case, which the trustee may not safely or correctly solve

That, under the trust created in this case, he could himself rent the property and receive and dispose of the rents, as that was directed therein, or permit the beneficiary to enjoy such rents by having the occupancy and use of the property itself.

That as there was no obscurity in the language employed to create the trust, or to define his powers and duties, there was no ground for doubt and no necessity for applying to the court for directions to be given to him concerning the execution of the trust, as it was for him and not for the court to decide what he would do with the property, for the purpose of realizing and applying its proceeds in execution of the trust

That the fact that the beneficiary had allowed the taxes and water rates to remain unpaid for several years, and had refused to pass over to him receipts and vouchers which she had obtained upon preceding payments, created no necessity for the application, as the trustee, for any cause or without any cause, had authority to possess himself of the property and administer the trust as provided in the deed.

That the facts proved did not entitle the petitioner, under the rule defining the jurisdiction of the courts of equity in this respect, to institute and maintain this proceeding at the expense of the estate.

APPEAL by Mary Elizabeth Penniman from an order confirming the report of a referee, and containing further directions concerning the administration of a trust in real estate, and from an order directing a reference to take proof of and report the expenses incurred in the proceeding which resulted in the first order.

The beneficiary, a married woman, having obtained from a justice of the Supreme Court a certificate that he had examined the condition and situation of the property, and made due inquiries into her capacity to manage and control the same, presented to her trustee a written request, as provided for in section 2 of chapter 375 of 1849, to convey to her the said premises for her sole and separate use.

*Joseph H. Choate* and *Jesse K. Furlong*, for the appellant, Mary Elizabeth Penniman.

*W. H. L. Lee*, for the petitioner and respondent.

DANIELS, J.:

The appellant is the daughter of the late Gardner Brown. She intermarried with George H. Penniman, the son of James F. Penniman, deceased. He conveyed to Gardner Brown a lot of land with a dwelling-house thereon known as 536 Fifth avenue, in trust

for the support and maintenance of the appellant during her life. While this trustee was living she was permitted to occupy the premises with her husband and children, and in that manner to enjoy the benefit and advantage of the trust estate. At his decease he left a will appointing the petitioner, who was his nephew, the trustee of the trust created, in this estate. That appointment was made pursuant to authority provided for that purpose in the trust deed, and it was afterwards ratified and confirmed upon an application to the court, and the petitioner afterwards permitted the beneficiary to occupy and enjoy the property, as that had been done by her during the lifetime of her father. This use and occupancy of the property continued to the month of January, 1884, when the petition was presented, which was the foundation of this proceeding. By this petition the trustee asked for the passing of his accounts and for instructions as to what it was proper for him to do in the management of the trust, and as to his duty concerning the possession of the trust estate, and for other relief. The petition was answered by the beneficiary and a reference was ordered to a referee to take proof concerning the allegations contained in the petition, and to report as to what should be done upon the petitioner's application. Proof at very considerable length was taken before the referee under this order and a report made by him, with a statement of the facts he deemed to have been proved, upon which the order was made from which the first appeal was brought.

On the hearing before the referee, as well as before the court, it was insisted in behalf of the beneficiary that upon the facts appearing by the evidence the petitioner had no ground for his application. That, however, was overruled, and the same objections have been urged to support the appeal. And as to the first part of the petioner's application the objections were well founded. For as he had paid out nothing in the administration of his trust and had received none of the proceeds of the property, there was no foundation for any accounting between himself and the beneficiary. The application accordingly resolved itself into one for the advice and direction of the court as to what he should do with the trust estate, and whether he should convey it over to the beneficiary under a certificate obtained by her from a justice of this court pursuant to section 2 of chapter 375 of the Laws of 1849.

She had applied to him for such a conveyance, but he had not

agreed to the propriety of the application, or consented in any form to the conveyance of the property to her. And as this statute was framed it was entirely and clearly optional with him, whether he would comply with the certificate and request, even if the statute should be held to include a trust of this description. For the statute has imposed no duty or obligation upon the trustee, but it has merely permitted him to convey the property when the case may be within the statute, and the certificate of a justice of the court has been obtained. The language of the act is, that the trustee may convey to such married women by deed, or otherwise, all or any portion of such property, or the rents, issues, or profit thereof, for her sole and separate use and benefit. It is as plainly permissive as language could well express its intention to be, and there was accordingly no reason or necessity for an application on his part to the court to know what his duty was in the premises. The statute provided for no such proceeding, but it delegated the authority, wholly and exclusively, to himself, and it was for him to determine whether he would make the conveyance or not. He was not bound to assign any reason for his refusal. It might be entirely arbitrary, but when made it would be conclusive upon the beneficiary. There was no cause, therefore, for him to ask the court what he should do under the circumstances presented, for it was not for the court to decide, but the decision was to be made wholly by himself. And the law does not permit a trustee to institute proceedings in equity to ask the advice or direction of the court, where the power has been wholly and plainly confided to the trustee, and it rests exclusively in his discretion as to what he should or should not do. The rule, on the contrary, is that it is in cases of doubt as to what the law is, and what their conduct ought to be under it, that trustees are entitled to instruction and direction from the court. (2 Perry on Trusts [2d ed.] §§ 476a and 928.) There must be at least some obscurity, or doubt in the case which the trustee himself may not safely or correctly solve, to entitle him to apply to the court for directions. As much as that is required by this legal principle, and also by the cases of, *Petition of Baptist Church etc.* (51 N. H. 424,) ; *Methodist Episcopal Society* v. *Heirs of Harryman* (54 N. H., 444); 2 Pom. Eq. Jur. (sec. 1064); Hill on Trustees ([3d Am. ed.], 812, 813) ; *Woodruff* v. *Cook* (47 Barb., 304, 310).

By the trust deed, the consideration for which was in a large part paid by the father of the beneficiary, the property was conveyed to the trustee to receive the rents, profits and income thereof, and apply the same, after paying all assessments, taxes, insurance and repairs upon said premises, to the use of Mary Elizabeth Penniman, wife of George H. Penniman, merchant, of the city of New York, during her natural life, or until the above described and granted premises shall be sold and conveyed, as hereinafter provided for, and upon the death of the said Mary Elizabeth Penniman to grant and convey the said premises to such person or persons, and in such manner as she shall, by her last will and testament or appointment in the nature of a will, executed in the presence of two or more witnesses, direct and appoint, and in default of such will or appointment, to grant and convey said prem ises, upon the death of the said Mary Elizabeth Penniman, to her heirs-at-law. And it was under this deed that the trust was to be administered. It was entirely plain in its directions, and created a trust as that was provided for by the statute of this State. And by the trust so created the trustee was empowered, and it was made his duty, to receive the rents, profits and income of the estate and apply them, after paying assessments, taxes, insurance and repairs, to the use of the beneficiary during her natural life, or until the premises should be sold and conveyed pursuant to authority contained afterwards in the deed for that purpose. There was no ambiguity in the language describing the office, functions and authority of the trustee, and under the trust as it was created he could himself rent the property, receive and dispose of the rents as that was directed, or permit the beneficiary to enjoy such rents by having the occupancy and use of the property itself. Whether he would do the latter, however, was wholly optional on his part, as much so as it was under the statute before referred to, whether he would convey the property upon the certificate of the judge, and in that manner allow the beneficiary to enjoy its rents, issues and profits.

If he did not elect to permit her to have the use and enjoyment of the property in this manner, he had the unqualified authority to take possession of the property himself and rent it, and out of the rents administer and execute the trust. There was no obscurity in the language employed for the creation of the trust, or to define

the duties and authority of the trustee.   And there was accordingly no ground for doubt and no necessity for applying to the court for directions to be given to him concerning the execution of the trust, but it was for himself, and not for the court, to decide what he would do with the property for the purpose of realizing and applying its proceeds in the execution of the trust.   No case of doubt was presented and no occasion disclosed creating the least necessity, or propriety for this application to be made to the court.

In justification of it, it was stated that the beneficiary had allowed the taxes to remain unpaid for the years 1880, 1881, 1883, and the Croton water rates for the year 1881, and that she had neglected and refused to pass over to him the receipts and vouchers which she had obtained upon preceding payments.   But these facts created no necessity for the application made by him, for the trustee for any cause, or without any cause, had the authority under the deed to possess himself of the property and administer the trust as that was directed in the deed.   If he became dissatisfied with her possession and management of the property, he could at once dispossess her and take that management and control in his own hands.   It was not requisite that he should have any advice or assistance from the court upon this subject, but it was for himself to decide under the circumstances what he would do, and to govern his action according to his own conclusions.   As to the vouchers received by the beneficiary for the payments made by her there seems to be no ground upon which he could legally claim their delivery.   They were her vouchers for what she had paid to relieve the property from liens and charges, not what had been paid in any manner by the action or instrumentality of the trustee.   And there seems, therefore, to be no reason why she should have been required to surrender these vouchers to the petitioner.

That his conduct in instituting this proceeding was unjustifiable appears further from the fact stated in his petition, that he had consulted and secured the advice of counsel.   And upon so plain a case as this was in all its features there could be no risk or hazard whatever in even a timid trustee acting upon that advice, so far as it followed the plain language of the statute, and that employed in the creation and declaration of the trust.   And if it failed to follow that language, then, as an intelligent, experienced man the trustee

himself was entirely competent to determine upon what he should do by consulting the deed itself and considering the language of the statute relating to her application to him for a conveyance of the title. This he appears to have done when he was applied to for a portion of the principal of another trust created by the will of the father of the beneficiary. Which, in like manner, confided the propriety of complying with her request for a portion of the principal to the judgment of the trustee. And in the exercise of that judgment he declined very judiciously, as the facts are made to appear, to advance any portion of the capital of the trust to the beneficiary, or to invest a further amount of it in the speculative enterprise which she desired to join. There was no more difficulty in exercising his judgment and following its dictates in the one case than there was in the other, and no more reason to apply, through the intervention of an expensive and complicated proceeding to the court for its advice or direction.

If the petitioner concluded to possess himself of the trust estate and administer the trust himself, either because the beneficiary had allowed the taxes and water rents to remain unpaid, or for any other reason, he was invested with the complete right to do so. And if she declined to surrender the possession of the property to him, his remedy for its recovery was not by the petition presented to the court in this proceeding, but by an action of ejectment. For this object the petition was entirely abortive, and the facts proved upon the hearing before the referee did not entitle the petitioner, under the rule defining the jurisdiction of courts of equity in this respect, to institute and maintain this proceeding at the expense of this estate. For whatever expense may attend it, it was the expectation and purpose to charge that upon the rents and profits of this estate. And to make that charge effectual was the object of the second application made to the court and the order of reference entered in pursuance of it. The expenses attending the first proceeding, directly and indirectly, are stated in an account accompanying the petition to amount to the sum of $1,491.94, and that it is proposed shall now be charged upon and paid out of the rents and profits of this property. The expense has been incurred for no benefit whatever to the estate, or to the trustee himself, except possibly what he may have incurred to counsel for advice given to him concerning his

authority over the trust estate and which does not specifically appear in this account. Whatever that may be will become the subject of a settlement hereafter to be made of his administration of the trust. It is not necessarily connected with this second proceeding, the object of which is to charge the expenses of the useless investigation which has taken place upon the proceeds of this property. The law expects, as the testator undoubtedly did, and the court did in making this selection of a trustee, that he would exercise his judgment, intelligence and experience for the benefit of the estate and to protect it from useless and unnecessary legal proceedings and expenses. That was his duty, and whatever he might do in the discharge of that duty, would be favorably considered by the courts. But to allow a trustee to institute and carry on at a large expense what appears to be an unnecessary and useless proceeding, is more than the courts have been disposed to permit, even in the great indulgence extended to persons acting in these capacities. The trustee may very well have become annoyed and perhaps exasperated by the conduct and letters of the beneficiary, but at the same time he should not have permitted this feeling to have swayed or affected his judgment, or induced legal proceedings on his part for which there was neither necessity nor propriety. To a certain extent she may have been equally in fault with himself. She should not have permitted the taxes and water rents to run in arrear, but they should have been promptly paid as they matured. And whatever information the trustee desired to obtain from her and she was able to communicate, should have been readily furnished to him, so that he could have seen at once the manner in which the trust estate was being managed, and that it was safely preserved for the children who would become entitled to it in remainder. That she failed to give, and perhaps under all the circumstances, although the proceeding was not authorized, the best that can be done with it will be to modify the first order, directing the referee's report to be confirmed without costs to either party, so far as it is declaratory of his right of possession, and sustains his refusal to convey the property to her, and reversing the order from which the second appeal has been taken with costs.

BARTLETT, J., concurred.

Order confirming referee's report modified as directed in opinion, without costs, and order directing reference, etc., reversed with costs·